IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CRAIG THOMAS BATES,

        Plaintiff,

v.

REBEKA BARTEL, SANDY DE YOUNG,
L. FAIT, KARI BUSKE, K. BELLILE,
MARK HEISE, and RANDALL HEPP,

        Defendants.

ORDER

17-cv-250-jdp

---

Pro se plaintiff Craig Thomas Bates, a former state of Wisconsin prisoner, brings claims that defendant prison officials violated his right to associate with his family, discriminated against him, and retaliated against him by refusing him visitation with his family and early-release programming. Defendants have filed a motion for summary judgment on all of Bates's claims, Dkt. 38, which I will grant because I conclude that defendants' restriction on visitation with his wife is reasonably related to legitimate penological purposes, and that Bates fails to present evidence showing that defendants acted with any improper purpose in making their decisions.

In the course of briefing the summary judgment motion, defendants contend that Bates forged a declaration by Bates's wife, DeLois Bates. I will direct Bates to respond to the allegation that he forged the declaration.

PRELIMINARY MATTERS

I will consider Bates's summary judgment opposition even though he filed his materials a few days late, after I gave him a final chance to submit opposition materials following his

failure to timely do so. *See* Dkt. 45. He titles his submission as a motion for summary judgment in its own right, but I will not consider it as a motion for summary judgment because it is so far past the original dispositive motions deadline. He also failed to sign his brief and his declaration. After the clerk of court directed him to submit signed versions, he has now done so. *See* Dkt. 57 and Dkt. 58.

Bates responds to most of defendants' proposed findings of fact by saying that he "would like to object and or deny at this time due to time available to respond." Dkt. 48, at 8. I take Bates to saying that he did not have enough time to complete individual responses to each proposed finding. But he has had more than enough time to complete his opposition materials, and his statement is not a proper rebuttal to any of the facts set forth by defendants, so I will treat the applicable proposed findings as undisputed.

UNDISPUTED FACTS

The following facts are drawn from the parties' summary judgment materials and are undisputed unless noted otherwise.

Plaintiff Craig Thomas Bates is a former state of Wisconsin inmate. He was released from prison in February 2018, and he is now on extended supervision.

Defendant Rebeka Bartel is a social worker at the Fox Lake Correctional Institution (FLCI). Defendant Randall Hepp is the warden at FLCI. Defendant Kari Bellile was the social services director at FLCI.

Defendant Mark Heise is the director of the DOC's Bureau of Offender Classification and Movement (BOCM). BOCM is responsible for determining the custody, placement, and program or treatment needs of inmates. The remining defendants all work for the BOCM.

Defendant Sandra DeYoung is a corrections classification management supervisor, and defendants Linda Fait and Kari Buske are offender classification specialists.

Bates was admitted to the Dodge Correctional Institution on June 4, 2015, after having his extended supervision revoked. In July 2015 Bates received an initial classification of medium custody. He was identified as needing Alcohol and Other Drug Abuse (AODA) treatment, Cognitive Intervention Program 1 & 2, and vocational training. He was deemed unsuitable for the Earned Release Program at least in part because he still faced pending charges. Bates was placed at the Fox Lake Correctional Institution, a medium-security facility. Bates had a reclassification hearing, also called "program review," by the Program Review Committee (PRC) in January 2016.

Inmates generally have reclassification proceedings every 12 months, but in August 2016, Bates wanted an early rehearing because his pending charges were resolved. In attempting to do so, he got into what he calls a "discrepancy" with defendant Bartel. Dkt. 52-1, at 1. He asked her for a PRC appeal form, but Bartel responded that he needed to make an appeal with 10 days of the PRC's decision. Bates wrote back, asking what the appeal deadline had to do with his request for a form; Bartel responded that they should meet. When they did meet, Bartel asked Bates if he knew why they were meeting. When he said no, she said, "Because of your sarcasm." Bates filed a formal request for an early reclassification hearing. Bartel recommended denying that request, stating that he had not demonstrated that his circumstances had changed. That recommendation was adopted.

Bates filed a series of grievances about the denial of an early reclassification hearing, in part complaining about the dispute between him and Bartel, but the grievances were rejected on procedural grounds.

Also in August 2016, Bartel received visitation requests for two proposed visitors for Bates: his wife, DeLois Bates, and his adult daughter, Mia Bates.[1] Bartel reviewed the daughter's application and background check and found no reason to deny the request. In mid-September, Mia was approved for visitation.

But in reviewing the application for DeLois, Bartel learned that DeLois had been the victim of some of Bates's prior charges. In Racine County case no. 09CM2166, Bates was accused of choking DeLois, taking away her phone, and keys, and telling another person to bring a gun to the house, presumably for the purpose of threatening or harming DeLois. In Racine County case no. 10CF354, Bates was accused of not letting DeLois leave their home, choking her, dragging her by her neck, slamming her on the floor, and threatening to kill her by stabbing her with a pen. These charges were ultimately dismissed and read in to another case which for which Bates was incarcerated.

Bartel sought more information from Bates's probation agent. Bartel noted that there was a 2003 misdemeanor case in which Bates was accused of violating a "domestic abuse order" and that he had completed domestic-violence counseling in 2006. The agent recounted some of the details of the 2009 and 2010 cases, and said that Bates had violated restraining orders and no-contact orders several times. On October 20, 2016, Bartel recommended denying DeLois's visitation request.

The request was forwarded to the social services director, defendant Bellile, who accepted the recommendation. Bates appealed the denial to defendant Warden Hepp, who affirmed the denial.

---

[1] To avoid confusion, I will generally refer to plaintiff as "Bates" and DeLois and Mia Bates by their first names or relationship to plaintiff.

Bates retained the ability to communicate with DeLois by phone or mail. Denied visitors may submit a new visitor request for reconsideration every six months. DeLois did not submit another request.

Bates had another reclassification hearing scheduled for January 4, 2017. Defendant Bartel held a pre-hearing interview with Bates. Bartel discussed Bates's offense history and the circumstances of those incidents. Bates stated he wanted to go a minimum-custody facility.

Because of her investigation into Bates's charges, Bartel thought that domestic-violence treatment needed to be added to Bates's program needs. Bartel says that she brought this up during the interview and that Bates denied having been violent and did not agree with the recommendations. Bates says Bartel did not discuss domestic-violence issues with him.

Bartel formally recommended that Bates remain at Fox Lake in medium custody and that domestic-violence counseling be added to his program needs. A Program Review Committee consisting of four officials, including defendants Buske and Bellile, reviewed Bates's classification. The committee recommended retention in medium custody and a transfer to the Jackson Correctional Institution (JCI), because AODA treatment was available there. Bates says that AODA treatment was not available for him there, although it is unclear whether he is saying that they did not offer it or that they did not have room for him when he was transferred. The committee added domestic-violence programming. On January 10, 2017, defendant Fait approved medium custody with transfer to JCI.

The committee also noted that Bates could not be placed in the Earned Release Program because of his medium-security custody level. Bates also was not a good fit for the program because he had only 13 months remaining in his term of imprisonment, while the wait list for the program was 8 to 12 months, and the program itself took 5 to 6 months to complete.

5

Bates appealed the classification decision; the decision was affirmed by defendant DeYoung, who stated that the decision complied with DOC administrative regulations and that the domestic-violence programming was "appropriate and fully documented." Dkt. 41-3.

Bates remained at FLCI and was on a waiting list to transfer to JCI until a bed became available. He was transferred to JCI on November 21, 2017.

ANALYSIS

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

A. **Equal protection**

Bates alleges that both the visitation and classification decisions violated his equal protection rights because defendants discriminated against him as a "minority" by making these decisions.

To state a claim under the Fourteenth Amendment's Equal Protection Clause, a plaintiff must establish that the defendants have treated him differently than people of a different race

and did so purposefully. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). But Bates fails to provide any evidence suggesting that the visitation or classification decisions had anything to do with Bates's race or ethnicity. Because Bates fails in his burden to set forth facts supporting his theory that defendants discriminated against him based on his race, I will grant summary judgment to defendants on this claim.

**B. Familial association**

Bates contends that Bartel's and Hepp's denial of visitation violated his rights to familial association under the First and Fourteenth Amendments.[2] He brings claims concerning visitation both with his daughter, Mia, and wife, DeLois. But the undisputed facts here show that he received visitation with his daughter, so I will grant summary judgment to defendants on that claim.

As for Bates's claim concerning visitation with DeLois, prisoners retain a limited constitutional right to familial association. *Easterling v. Thurmer*, 880 F.3d 319, 322–23 (7th Cir. 2018) (citing *Turner v. Safley*, 482 U.S. 78, 95–96 (1987), and *Overton v. Bazzetta*, 539 U.S. 126, 131–32 (2003)). Under *Turner* and *Overton*, the question is whether the restriction is reasonably related to a legitimate penological interest. In determining whether a reasonable relationship exists, the Supreme Court usually considers four factors: whether there is a "valid, rational connection" between the restriction and a legitimate governmental interest; whether alternatives for exercising the right remain to the prisoner; what impact accommodation of the

---

[2] The facts here show that defendant Bellile formally denied the visitation request by accepting Bartel's recommendation. But Bates did not allege that Bellile had a role in denying the visitation request, so he does not bring a claim against her about this issue.

right will have on prison administration; and whether there are other ways that prison officials can achieve the same goals without encroaching on the right. *Turner*, 482 U.S. at 89.

The first *Turner* factor is often viewed as a "threshold" factor that can be dispositive for either party. *Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010) ("The four factors are all important, but the first one can act as a threshold factor regardless which way it cuts."). In evaluating whether there is a valid, rational connection between a restriction and the state's legitimate penological interests, the initial burden of proof rests on the defendant state officials. *Id.* at 536–37. Once the defendants offer a "plausible explanation" for the restriction, the burden shifts to plaintiffs to present evidence undermining the state officials' explanation. *Id.*

Defendants provide plausible, rational reasons for denying Bates visitation with DeLois: given Bates's history of domestic violence, prison officials were concerned that Bates would continue to harm DeLois physically or verbally if she were allowed to visit, and that visits with a prior victim could interfere with the effectiveness of domestic-violence programming. Prison security, safety of the public—including the victims of the prisoner's previous crimes—and the promotion of effective programming are legitimate penological interests, and courts have upheld similar denials of visitation requests on these rationales. *See, e.g.*, *Overton*, 539 U.S. at 133 (prison has "valid interests in maintaining internal security and protecting child visitors from exposure to sexual or other misconduct or from accidental injury"); *Stojanovic v. Humphreys*, 309 F. App'x 48, 51 (7th Cir. 2009) (denial of visitation with daughter did not violate Constitution); *Vega v. Tegels*, No. 17-CV-66-BBC, 2018 WL 3448242, at *6 (W.D. Wis. July 17, 2018) (denial of visitation with wife and children without completion of domestic-violence program did not violate Constitution).

The other factors weigh in defendants' favor as well. It is undisputed that Bates was able to communicate with DeLois by mail or phone, so he had alternative, if less intimate, ways to maintain his relationship with her. *See Overton*, 539 U.S. at 135 (stating that "[a]lternatives to visitation need not be ideal" substitutes to survive *Turner* analysis). And prison officials state that if they were forced to dedicate extra security focus on visits between Bates and DeLois, attention would be siphoned away from protecting other visitors and inmates. *See Stojanovic*, 309 F. App'x at 52 ("we are confident that accommodating Stojanovic's interest would substantially impact prison resources by steering resources toward the children's safety and therefore hindering the guards' ability to protect other visitors and inmates"). They also state that a potential alternative, introducing no-contact visits for the general-population inmates like Bates, would be unworkable for such a large number of inmates, and in any case would still potentially interfere with the goals of domestic-violence programming.

Inmates who challenge the reasonableness of a prison restriction bear a heavy burden of proving its invalidity, because courts must give "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton*, 539 U.S. at 132. Bates fails to meet this burden. His only developed challenge to the restriction is his contention that the denial was irrational because he and DeLois have not been involved in any domestic violence since 2009, and even those incidents were "only . . . arguing." Dkt. 49, at 2. Bates also submits what he says is a declaration from DeLois in which she states that "prior to Craig's incarceration there were no domestic violence issues between us" and that "I have never feared for my life around Craig nor do I ever feel threatened." Dkt. 50, at 1.

9

Defendants contend that this declaration is a forgery, noting that DeLois's signature looks virtually identical to Craig Bates's handwriting, and different from a notarized signature of hers. *See* Dkt. 22, at 2 (DeLois's affidavit in support of Bates's motion or preliminary injunctive relief). For the purposes of ruling on defendants' summary judgment motion, I will assume that the declaration is authentic.[3] I will discuss the forgery question in more detail below.

But even assuming the declaration is authentic, I will grant summary judgment to defendants, because they made reasonable decisions to rely on court documents and Bates's probation agent's statements that Bates indeed had a history of domestic violence toward DeLois. Even if they were somehow mistaken about the history of Bates and DeLois's relationship, negligent conduct does not violate the Constitution. *See Daniels v. Williams*, 474 U.S. 327, 333 (1986) *Harrell v. Cook*, 169 F.3d 428, 432 (7th Cir. 1999). The evidence shows that Bartel and Hepp made a reasonable decision on Bates's visitation based on their consideration of all the evidence of Bates's domestic violence.

**C. Retaliation**

Bates alleges that defendants Bartel and Hepp denied him visitation rights with his wife and daughter in retaliation for previous complaints he filed against Bartel. He also alleges that defendant Hepp retaliated against him by recommending that domestic-violence programming be added to his list of programs for the purpose of preventing him from participating in the Earned Release Program.

---

[3] Bates belatedly submitted a second declaration from DeLois, this one appearing to bear her signature, in which she says that "I have never felt unsafe in Craig's presence but rather the opposite." Dkt. 59, at 1. Because I will credit DeLois's similar statements in her first declaration, I need not consider the second one when addressing the merits of the claims.

10

To succeed on a First Amendment retaliation claim, a plaintiff must show: (1) the constitutionally protected activity in which he was engaged; (2) one or more retaliatory actions taken by the defendant that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) sufficient facts to make it plausible to infer that the plaintiff's protected activity was one of the reasons defendants took the action they did against him. *Bridges v. Gilbert*, 557 F.3d 541, 556 (7th Cir. 2009).

I've already dismissed the familial association claim about visitation with Mia because Bates was indeed allowed to visit with her. So I will also dismiss the retaliation claim regarding visitation with Mia.

I have also already discussed Bartel's and Hepp's stated rationale for denying Bates's visits with DeLois, so I need not recount it here. In support of his retaliation claim, Bates contends that Bartel denied visitation only after he filed grievances about her in the weeks preceding the denial. He also says that she was previously "hostile" to him when they discussed his request for an early reclassification. But defendants say that grievances are kept confidential unless information needs to be disclosed to investigate a complaint. Here, there is no evidence suggesting that Bartel knew that Bates had filed the grievances, which were rejected on procedural grounds, without any indication that Bartel was consulted.

Even if Bartel might have known about the grievances, Bates's retaliation claim boils down to suspicious timing and Bartel's "hostility" toward him over his request for an appeal form. But suspicious timing by itself can only rarely support a retaliation claim. *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 673 (7th Cir. 2009). Bates seems to be saying that Bartel's earlier hostility toward him shows that she had it in for him. But at most, she and he seem to have had a misunderstanding over what Bates was trying to accomplish: she thought

he was filing an obviously late appeal, and he wanted to ask for an early reclassification hearing. This type of minor verbal altercation comes nowhere close to showing that Bartel carried a grudge against Bates. In short, Bates's evidence of retaliatory motive is simply too scant for a reasonable jury to conclude that it was a motivating factor in the decision. Here, the vastly more plausible rationale is the one Bartel gave in recommending denial of visitation: that Bates's history of domestic violence warranted denial. Bates's mere speculation that she meant to retaliate against him is not enough to create a disputed issue of material fact. *See Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012) (speculation not enough to defeat motion for summary judgment). I will grant defendants summary judgment on the retaliation claim against defendant Bartel.

As for defendant Hepp, Bates's evidence is even thinner because he does not explain why Hepp would seek to retaliate against him for grievances about Bartel and other employees. So I will grant defendants summary judgment on that claim.

Bates also alleges that defendant Hepp retaliated against him by recommending that domestic-violence programming be added to his list of programs for the purpose of preventing him from participating in the Earned Release Program. But Hepp says that he did not have any involvement in this decision, and Bates does not point to any evidence supporting his allegation that Hepp actually played a role. So I will grant summary judgment to defendants on this claim. That means that defendants' motion for summary judgment is granted in its entirety, and the case will be dismissed.

D. Sanctions

I stated above that defendants contend that Bates forged DeLois's first declaration in support of his summary judgment opposition. Falsifying evidence is serious misconduct that

this court cannot tolerate. Courts have sanctioned litigants by excluding the forged evidence, penalizing the offending party monetarily, or dismissing the party's lawsuit. *See, e.g.*, *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 402 (7th Cir. 2015); *see also Rivera v. Drake*, 767 F.3d 685, 686–87 (7th Cir. 2014). I am not convinced that any of those potential sanctions would have any teeth here because of Bates's *in forma pauperis* status and because I am already dismissing the case on the merits. So I will also consider dismissing Bates's other pending lawsuit. 16-cv-745-jdp, or barring Bates from filing any future lawsuits in this court.

I will give Bates a chance to respond by addressing defendants' allegation that he falsified DeLois's signature on the declaration, and showing cause why he should not be sanctioned for forgery.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 38, is GRANTED.
2. The clerk of court is directed to enter judgment for defendants.
3. Plaintiff may have until October 11, 2018, to respond to this order regarding defendants' allegation that he forged DeLois Bates's signature on her declaration, Dkt. 50.

Entered September 20, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge